STATE OF VERMONT
ENVIRONMENTAL COURT

|  | } |  |
|---|---|---|
| In re: Simpson Development Corporation | } | Docket No. 54-3-05 Vtec |
| (Appeal of Prelim. Plat | } |  |
| and PRD determinations) | } |  |

## Decision on Town's Motion to Alter and Amend Judgment

Appellee Town of Norwich (Town) filed its post-judgment motion pursuant to V.R.C.P. 59(e) to alter and amend this Court's Decision dated June 27, 2006. In that Decision, the Court vacated the March 4, 2005 decision of the Norwich Development Review Board (DRB) and granted intermediate subdivision and planned residential development (PRD) approval to Appellant-Applicant Simpson Development Corporation's (Simpson) two-lot subdivision and five-unit townhouse PRD on its 3.95± parcel of land in the Town's Village Residential District. Simpson timely filed the instant Rule 59(e) motion within ten working days of our June 27 Decision. As a consequence, the running of the time for appeal of our June 27 Decision is terminated, and the full time for appeal begins anew, starting on the date of this Decision.

The Town raises three general issues regarding our June 27 Decision, and makes sixteen specific requests[1] for alterations or amendments to correct alleged errors in that Decision. The three general issues raised by the Town are that this Court allegedly: (1) re-wrote the definition of the Scenic Gateway in Finding 18 of our June 27 Decision; (2) re-wrote Appellant-Applicant's Question 5 of their Statement of Questions, thus ruling that there was "finality" based on a question not properly before the Court; and (3) erroneously ruled that preliminary determinations are final if not appealed from.

V.R.C.P. 59(e) is analogous to Federal Rule of Civil Procedure 59(e) which is construed in a leading treatise as follows:

> [R]econsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly. There are four basic grounds upon which a Rule 59(e) motion may be granted. First, the movant may demonstrate that the motion is necessary to correct manifest errors of law or fact upon which the judgment is based. Second, the motion may be granted so that the moving party may present newly discovered or previously unavailable evidence. Third, the motion will be granted if necessary to prevent manifest injustice. Serious misconduct of counsel

---

[1] The Town states that these "sixteen specific areas of error . . . are not intended to be exhaustive," Motion to Alter and Amend at 2.

may justify relief under this theory. Fourth, a Rule 59(e) motion may be justified by an intervening change in controlling law.

The Rule 59(e) motion may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment. Also, amendment of the judgment will be denied if it would serve no useful purpose. In practice, because of the narrow purposes for which they are intended, Rule 59(e) motions typically are denied.

11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2810.1 (1995 and Supp. 2006) (internal footnotes omitted).

The Town makes its thorough and well-argued motion on the first of the above listed grounds, asserting errors of fact or law upon which the judgment was based. Accordingly, we will examine the basis of our June 27 Decision for error. This Court will not, however, rewrite or restate the reasoning behind its Decision. A motion under V.R.C.P. 59(e) does not provide a second "bite at the apple" for litigants who are dissatisfied with the outcome of a case, but rather presents the Court with an opportunity to correct its mistakes, if any exist. See Osborn v. Osborn, 147 Vt. 432, 433 (1986) (stating that V.R.C.P. 59(e) "codifi[es] the trial court's inherent power to open and correct, modify or vacate its judgments . . . allow[ing] the trial court to revise its initial judgment if necessary to relieve a party against the unjust operation of a record resulting from the mistake or inadvertence of the court . . ..") (internal quotations and citations omitted).

This appeal was taken as an de novo appeal, as Norwich has not adopted and implemented the procedures necessary for on-the-record appeals pursuant to 24 V.S.A. § 4471(b). This Court was therefore not reviewing the appealed-from decision of the DRB, but rather stood in the shoes of the DRB and looked anew at Simpson's application, in light of the evidence presented at trial. In doing so, this Court considered the Town's zoning regulations, subdivision regulations, and Inventory of Scenic Resources, each of which is a component of the regulatory concept governing the then pending application. In doing so, the Court was required to exercise its judgment and make subjective determinations as to whether the application was in keeping with the regulatory concept as a whole.

The Town asserts that it was error for this Court "not to find that the value of the gateway as set forth in the Inventory of Scenic Resources . . . is as open space," Motion to Alter and Amend at 7–8. The Town further asserts that the "only evidence of the value of the open field part of the gateway is as open land," id. at 8 (emphasis in original).

2

The Town appears to interpret the language of the Inventory of Scenic Resources, as incorporated into the Norwich Subdivision Regulations, as a bar on any development in the open areas of the scenic gateway. Such an interpretation is at odds with the Norwich Zoning Regulations (Regulations), which allow one- and two-family homes as permitted uses in the Village Residential District, a district which encompasses Simpson's entire parcel.

As some development (i.e., one- and two-family homes) is allowed by right within the open spaces of the gateway, the Town's argument that Simpson's subdivision and PRD must be denied because the open space of the gateway needs to be preserved as undeveloped land is unavailing.[2]

We also note that the Town's assertion that the proposed development is in conflict with the Norwich Zoning and Subdivision Regulations (including the Inventory of Scenic Resources, as incorporated therein) is directly opposite to the prior, unappealed determination of its own DRB. We discussed the impact of the prior, unappealed determination on Simpson's preliminary application in the June 27 Decision and discuss it further below.

The Town asserts that it was error for this Court to treat "preliminary determinations as final determinations," Motion to Alter and Amend at 6. This Court ruled that "preliminary determinations that are not successfully appealed from provide for finality on certain legal determinations properly made at that stage of the subdivision review proceeding," June 27 Decision at 13.

This Court has both the authority and the obligation to recognize the finality of preliminary determinations, where those determinations were properly made at that stage of the proceedings and not successfully appealed. One purpose of preliminary determinations is to resolve some initial legal questions so that subsequent stages of review may focus more narrowly on the remaining issues. For example, the question of whether the municipal regulations allow development in the gateway generally, and more particularly whether the regulations allow for a five-unit townhouse in the gateway, is properly resolved at the preliminary stage. Later stages of review may then focus on the specifics of the proposed development, including whatever changes, conditions, or further documentation might be required.

The preliminary determinations at issue here appear in the DRB's October 28, 2004 decision approving Simpson's Preliminary Site Plan, admitted at trial as Exhibit 3. In that

---

[2] In fact, as stated in Finding 23 of our June 27 Decision, Appellant-Applicant had previously obtained a permit to construct a similarly sized two-family dwelling on the subject property.

decision, the DRB concluded that the "development of dwelling(s) on the 1.84 acre parcel is consistent with the applicable Subdivision Regulations," Exhibit 3, at 3, and that "the proposed subdivision plan generally conforms to applicable subdivision review standards . . . and with other municipal regulations currently in effect." Id.

Simpson justifiably relied on that unappealed decision, and invested both money and time preparing for the next stage of review. The DRB's decision approving Simpson's preliminary site plan does not, of course, constitute final approval for the project. But that preliminary decision is final as to the question of whether a five-unit townhouse is generally allowed in the proposed location. The Town, not having appealed the decision of its DRB, may not later argue that no such development is allowed on that site. See In re Gulli, 174 Vt. 580, 583 (2002) ("In the absence of an appeal, all parties are bound by the DRB's decisions and shall not thereafter contest, either directly or indirectly, such decision or act in any proceeding") (internal quotation and ellipses omitted).

While we believe that our discussion here allows us to refrain from specifically addressing every one of the Town's "non-exhaustive" assertions of error, one merits additional specific mention. The Town asserts that it was error for this Court to grant PRD approval, as such approval was not requested in Simpson's Statement of Questions, and there is no evidence that the DRB considered the project as a PRD. While the Statement of Questions does not include a request for PRD approval, the phrase "proposed Planned Residential development" (or "proposed PRD") appears seven times in the five Questions. Simpson concurrently applied for site plan review and PRD approval at the preliminary review stage, see Exhibit 3, at 1. Furthermore, the zoning regulations provide that "[a]pplications of PRDs shall be reviewed simultaneously with applications for major subdivision review," Regulations § 12.2.3. This Court, standing as it did in the shoes of the DRB, had both the authority and the responsibility to review the proposed project as a PRD.

For the foregoing reasons, the Town's Motion to Alter and Amend is **DENIED**.

Done at Berlin, Vermont this 7th day of September, 2006.

_____

Thomas S. Durkin, Environmental Judge

4